# Illinois Official Reports

## Appellate Court

---

*People v. Brown*, **2017 IL App (3d) 150070**

---

Appellate Court
Caption

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIEUSEUL BROWN, Defendant-Appellant.

District & No.

Third District
Docket No. 3-15-0070

Filed

June 20, 2017

Decision Under
Review

Appeal from the Circuit Court of Peoria County, No. 13-CF-300; the Hon. David A. Brown, Judge, presiding.

Judgment

Affirmed in part and vacated in part.

Counsel on
Appeal

Michael J. Pelletier, Peter A. Carusona, and Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant.

Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Jasmine Morton, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justice Wright concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendant Dieuseul Brown was convicted after a bench trial of armed violence, unlawful possession of a weapon by a felon, and unlawful possession of a controlled substance. The trial court sentenced him to an 18-year term on the armed violence count and an 8-year term on the weapon charge and found the unlawful possession of a controlled substance conviction merged with the other judgments. Brown appealed, challenging his sentences on one-act, one-crime principles. We vacate Brown's conviction for unlawful possession of a weapon by a felon.

¶ 2                                   FACTS

¶ 3      Defendant Dieuseul Brown was charged with armed violence (count I), unlawful possession of a weapon by a felon (count II), and unlawful possession of a controlled substance, cocaine (count III). Count I alleged that Brown committed armed violence by committing unlawful possession of a controlled substance while armed with a handgun. Count II alleged Brown committed unlawful possession of a weapon by a felon by possessing a firearm after having been previously convicted of a felony. Count III alleged Brown possessed less than 15 grams of cocaine.

¶ 4      Brown moved to quash the indictment, pointing to the inconsistencies in a detective's grand jury testimony that the cocaine was discovered on Brown when he was arrested. Discovery revealed that the drugs were not found until several hours after Brown's arrest when he was searched again at the police station prior to transport to the county jail. The State reindicted Brown and corrected the misstatements to the grand jury. In the supplemental indictment, the armed violence count became count IV and the cocaine possession charge became count V. The trial court denied Brown's motion to quash.

¶ 5      The cause proceeded to a bench trial. Two Peoria County detectives testified that Brown had a gun on his person when they arrested him for an unrelated first degree murder. An officer patted down Brown prior to bringing him to the police station and conducted another pat down search before uncuffing Brown at the station. Brown was interviewed, used the bathroom, and was again searched prior to transport to the county jail. During this search, a small baggie of cocaine was found in Brown's watch pocket in his jeans.

¶ 6      On the State's motion, the trial court admitted portions of the transcripts from Brown's murder trial where he admitted that he was a drug dealer, that he owned the gun discovered on his person, and that he kept a gun on him at all times. Also admitted into evidence was a certified copy of Brown's prior conviction.

¶ 7      The defense presented evidence that a cell phone that presumably belonged to Brown was found outside the interview room at the police station. The parties stipulated to descriptions of the physical layout of the police station and a timeline of Brown's arrival, interview, and departure. Brown argued in closing arguments that the police searches were sloppy and that he could have found the cocaine at the police station. The State argued that it proved Brown possessed both the gun and the cocaine simultaneously and that the drugs were not discovered in the earlier searches because the package was small and soft and the police were looking for weapons.

¶ 8      The trial court found that Brown was proved guilty beyond a reasonable doubt of all three counts, that he possessed the cocaine and gun at the same time, and that it could be reasonably

inferred that Brown did not find the cocaine at the police station. Brown moved for a new trial, which was heard and denied.

¶ 9    A sentencing hearing took place. The State sought a 44-year sentence and agreed that the unlawful possession of a controlled substance conviction would merge with the other judgments. It argued that the unlawful possession of a weapon by a felon would not merge because it has the "separate element being the felony conviction which would be the separate act." Brown agreed that the weapon conviction would not merge with the armed violence conviction because it was not a lesser included offense and sought concurrent sentences.

¶ 10   The trial court imposed an 18-year term of imprisonment for the armed violence conviction and an 8-year term for unlawful possession of a weapon by a felony with the sentences to be served consecutively to each other and at 85%. The trial court merged the conviction for unlawful possession of a controlled substance into the other judgments. Brown filed a motion to reconsider his sentence, which was heard and granted, with the trial court finding Brown was eligible for day-for-day good time credit. Brown appealed.

¶ 11                                             ANALYSIS

¶ 12   The issue on appeal is whether the trial court's sentencing determination violated one-act, one-crime principles. Brown argues that his conviction for unlawful possession of a weapon by a felon must be vacated under one-act, one-crime principles because it was based on the same physical act of gun possession as used in his armed violence conviction.

¶ 13   Courts employ a two-step analysis in applying one-act, one-crime principles. *People v. King*, 66 Ill. 2d 551, 566 (1977). First, the court decides whether the defendant's conduct was a single physical act or multiple acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If a single act, multiple convictions based on the act are prohibited. *Id.* Second, where the conduct consisted of multiple acts, the court must determine whether any of the offenses are lesser-included offenses. *Id.* This court reviews whether a conviction violates one-act, one-crime principles *de novo*. *People v. Boyd*, 307 Ill. App. 3d 991, 998 (1999).

¶ 14   We must first decide whether Brown's conduct constituted a single act or multiple acts. In the Second District case of *People v. Williams*, 302 Ill. App. 3d 975, 976 (1999), the defendant was convicted of armed violence based on possession of a controlled substance, unlawful possession of a weapon by a felon, and unlawful use of a weapon. The charges arose from a traffic stop where the police found a gun and drugs in the backseat where defendant was sitting. *Id.* at 977. He was sentenced on the armed violence and unlawful possession of a weapon by a felon convictions. *Id.* at 976. He appealed on one-act, one-crime principles. *Id.* at 977. The reviewing court determined that there were no separate acts and that the "common act is a felon possessing a gun and drugs simultaneously." *Id.* at 978.

¶ 15   In the Fourth District case of *People v. White*, 311 Ill. App. 3d 374, 379 (2000), the defendant was convicted, in part, of one count each of aggravated discharge of a firearm, armed violence, and unlawful possession of a weapon by a felon and sentenced on all three convictions. When he appealed on one-act, one-crime grounds, the reviewing court determined that the defendant simultaneously possessed both the gun and drugs, but they were distinct acts. *Id.* at 385. The *White* court rejected *Williams*, finding it was wrongly decided. *Id.* The court concluded that the defendant's convictions for armed violence and unlawful possession of a weapon by a felon were based on separate acts and held that multiple convictions did not violate one-act, one-crime principles. *Id.* at 386. The *White* court found that despite the

commonality of the gun, armed violence required an additional act of drug possession and unlawful possession of a weapon by a felon required an additional element of the defendant's felon status. *Id.*

¶ 16 The First District's recent decision in *People v. West*, 2017 IL App (1st) 143632, ¶ 25, follows the reasoning in *Williams* that the same act of gun possession cannot be used to sustain two convictions. In *West*, the defendant was convicted of armed habitual criminal and aggravated unlawful use of a weapon. *Id.* ¶ 1. The reviewing court found the convictions "arose out of the same physical act," possession of the same gun. *Id.* ¶ 25. The court considered the defendant's status as a felon under both offenses and found that it could not support multiple convictions based on the remaining act of gun possession. *Id.*

¶ 17 Like the *West* court, we consider *Williams* to be the better reasoned approach. In *White*, the court compared the elements of armed violence and unlawful possession of a weapon to decide whether they involved a single act or multiple acts. *White*, 311 Ill. App. 3d at 386 (despite possession of a weapon as an act common to both offenses, "armed violence required the additional act of possession of the drugs, and unlawful possession of a weapon by a felon required the additional element of status as a felon"). In doing so, the difference between acts and elements is extinguished and the two-step analysis merges into a determination of whether one offense is a lesser-included offense of other. The *White* court improperly begins with the second step in the analysis to determine whether there were multiple acts.

¶ 18 The proper question to be determined is whether Brown's conduct was a single act or multiple acts. The *King* court defined "act" as " 'any overt or outward manifestation which will support a different offense.' " *Rodriguez*, 169 Ill. 2d at 188 (quoting *King*, 66 Ill. 2d at 566). Here, as in *Williams*, Brown's convictions are based on the same physical act of him possessing a gun. Under the armed violence conviction, he was armed with a handgun while also possessing cocaine, and under the other conviction, he possessed a firearm as a felon. Brown's felon status is not "an overt or outward manifestation" but an element of the offense. See *Williams*, 302 Ill. App. 3d at 978 (recognizing convicted felon element as a status); *White*, 311 Ill. App. 3d at 386 (same); *West*, 2017 IL App (1st) 143632, ¶ 25 (recognizing defendant's habitual criminal portion of armed habitual criminal offense as a status).

¶ 19 Both convictions are based on the same physical act of Brown possessing a gun. We thus find that Brown's conduct was a single act. Because we find that Brown's convictions are based on the single act of gun possession, we do not need to address the second step in the analysis. Under one-crime, one-act principles, once the court determines the defendant's conduct consisted of a single act, the analysis ends.

¶ 20 Brown did not raise this issue below, but having determined an error occurred, we consider plain error review proper. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (determining whether an error occurred is the first step in plain error analysis); *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009) (violation of one-act, one-crime principles "affects the integrity of the judicial process" and is appropriate for plain error review under doctrine's substantial rights prong). Brown's multiple convictions are improper, and we thus vacate the less serious conviction, unlawful possession of a weapon by a felon, and its eight-year sentence. Brown's conviction for armed violence remains.

¶ 21 The judgment of the circuit court of Peoria County is affirmed in part and vacated in part.

¶ 22 Affirmed in part and vacated in part.